Wickham, J.
This action was brought to charge the defendant, Michael Sanders, as a trustee of certain property of Adam Mitz, for the benefit of creditors. The following are the facts of the ease:
On August 27, 1904, Adam Mitz made an assignment to Fred S. Marquis for the benefit of his creditors. On that date and divers times prior thereto in the same month, Mitz placed in the hands of the defendant, Michael Sanders, sums of money aggregating $3,800. Sanders received from Mitz, in addition to the money, a bale of tobacco about the same time. When Sanders took possession of the tobacco and money he knew Mitz was insolvent and contemplated making an assignment for the benefit of his creditors. Sanders was not a creditor of Mitz; he did not take the property as a preferred creditor, but as a mere custodian. He put the tobacco in a building of which he had control, and the money in a private safety vault in a bank. In October following, the tobacco and money were returned to Mitz by Sanders.' This is denied by the plaintiffs, but Sanders *586 so testified and his testimony is not contradicted; besides, in view of all of the circumstances, I think it is a reasonable story and therefore true.
Mitz intended to defraud his creditors. He intended to make a pretended assignment of all his property for the benefit of his creditors, and withhold and conceal the greater part of his assets. He probably thought it would be necessary to place this property out of his hands till after he made the assignment, when he could retake possession of it and conceal it 'from his creditors. Sanders was- a party to the intended fraud and willingly lent his assistance to Mitz to carry out the fraudulent design.
But under these facts is Sanders to be charged as a trustee for the creditors of Mitz. The plaintiffs assert the affirmative of the proposition, and the defendant, Sanders, the contrary. There is no doubt that the transfer was within the scope of Revised Statutes, Section 6343. It was made by Mitz to hinder, delay and defraud his creditors. Sanders took the property with knowledge of the fiñanical condition of Mitz and to further his fraudulent designs. His conduct with respect to the property can be explained on no other theory. He is not a creditor of Mitz, and therefore he did not take the property in payment of or as security for any claim. It was not a loan to him, for he did not use any of the money, although that was claimed by his counsel in the statement of the case, but no evidence was produced to sustain it. He simply put it in his strong box and kept it there about two months, and then returned the identical bills and notes to Mitz; the bale of tobacco was returned at the same time.
This suit was brought by the plaintiffs to charge Sanders in February, 1906, sixteen months after the return of the property by Sanders to. Mitz.
On a review of the decisions of our Supreme Court applicable to the question here presented, our conclusion is that under the facts of the case Sanders can'not be charged as a trustee for the creditors of Mitz, and our judgment will be for him, and we cite -the f ollowing authorities to sustain this conclusion of law: Swift et al v. Holdridge, 10 Ohio, 229. The first paragraph of the syllabus reads:
*587 “A fraudulent grantee is not liable as a trustee who has restored the property, or conveyed it away, to a bona fide purchaser before the rights of the creditors are fixed by obtaining a judgment and filing a creditor’s bill. ’ ’
On page 231 of the opinion in this case the court say:
“An honest man will not take a fraudulent conveyance. If a man holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty he will restore it to those to whom it belongs; he ought to give it back to him from whom re received it, that it may be applied to his debts if wanted, or to his benefit, if not necessary for this purpose. The law, to discourage frauds, does not compel him to restore it to the fraudulent grantor; yet no man will retain it for a moment who desires the reputation of honesty and possesses a sense of. justice. ’ ’
Also:
“The relations between him and the creditors of the debtor are different. There are no express obligations between them; no promise to be accountable to them; no obligation to restore to them; but the creditor ought to receive his debt, and the law gives him a claim to the property, and it charges the fraudulent holder as a trustee in consequence of his position. The trust is not express—created by contract; but it arises by operation of law, in consequence of his having in his hands that which ought to be applied to the satisfaction of the creditor’s debt. It depends-, therefore, on the possession of the property. The character of cestui que trust does not belong to the general creditor, until he has shown himself entitled to the “debtor’s property by the recovery of a judgment. And if the fraudulent holder has, in good faith, divested himself of that which he could not retain without dishonesty, before the right of the creditor has accrued, there is nothing remaining upon which to rest a trust, and relation of trustee to anybody subsists no longer. ’ ’
The language above is quoted with approval by Judge Ranney in a dissenting opinion in the case of Webb v. Brown, 3 O. S., 246. The property transferred in this case was chattel property. I quote from Judge Ranney’s opinion found on page 264:
“But while the law left G-arnier (the fraudulent grantor) without remedy to compel a restoration of his goods, it still recognized the moral obligation of Bour (the fraudulent grantee) to restore them; and if he availed himself of the locus penitentiae and complied with this moral duty, it so far respected his act and *588 intention as to relieve him from accountability as a trustee to the creditors of Gamier, which rested upon him while he retained the possession.”
In Hollowell & Company v. Bayliss, 10 O. S., 537, in the opinion Judge Brinkerhoff says, at page 542:
“They (fraudulent transfers) are void as against such creditors only as are able by means of some kind of legal process to fasten upon the property, or its proceeds, while in the hands of the fraudulent vendee. While the property or its proceeds are in the hands of the fraudulent vendee, the property may be seized.by process in favor of creditors, or if he have not the property but its proceeds in his hands, he is held, by operation of law, as a trustee to the extent of its fair value, in favor of creditors who shall, by legal proceedings, assert their claim upon them, and will be held to a rigid account for such proceeds. But however fraudulent the original purchase may have been, if the vendee before the rights of a creditor are in any way fixed by legal process or proceedings, honestly restore to the vendor, either the property itself or its full and fair value, and a fortiori, if, in addition to this, these fair proceeds are by the vendor applied to the payment of his honest debts, the vendee is exonerated from further liability. To these principles the cases are full and clear.”
In White v. Brocaw, 14 O. S., 339, Judge Ranney, who announced the opinion of the court, says at page 341:
“In inspect to the ground for relief stated- in the bill, to which reference has been made, it is enough to say that no principle is better settled than that a conveyance made to defraud-creditors is good between the parties, and no remedy is afforded the fraudulent grantor, or his heirs, to reclaim the property. But this rule has its foundation in the anxiety of the law to discourage frauds, and the moral obligation of the grantee to restore property so held is not only clear but is fully recognized in the decided eases. If he does restore, the law discharges him from liability as a trustee for the creditors of his grantor, and undoubtedly any steps taken or acts done by him subsequent to the conveyance, toward the discharge of this moral duty, should receive the favorable consideration of a court of equity.”
The foregoing eases are cited with approval by the court in Starr v. Wright, 20 O. S., 97, and the same doctrine is announced in Pride v. Andrew, 51 O. S., 405.
*589 All of the earlier cases on this question are cited by the court in Robertson v. Desmond & Ryan, 62 O. S., 487, and the court in that case lays down the broad rule that:
“One to whom a transfer of property has been made by a debtor, in contemplation of insolvency, in trust to prefer one or more creditors, may, before - any legal steps are taken to have it declared a trust for the debtor’s creditors, renounces the trust and restore the property without being individually liable for its value.”
This is the language of the first paragraph of the syllabus of the case cited.
I have been unable to find any authorities to the contrary, and assume there are none. They seem to make no difference between real estate and chattel property, and no legal consequences or conditions could attach to money -that would not attach to any other form of chattel property.
The petition of the plaintiffs is dismissed with costs. Motion for a new trial overruled and exceptions may be entered. Bond for appeal in the sum of $200.